IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| vs. ) | CRIMINAL NO. 22-CR-634 JB |
| ) | |
| **ROBERT PADILLA, a.k.a. "Fathead,"** ) | |
| ) | |
| Defendant. ) | |

### UNITED STATES' RESPONSE TO DEFENDANT'S MOTION FOR NEW TRIAL

The United States respectfully requests that the Court deny Defendant Robert Padilla's Motion for New Trial (ECF No. 273) and uphold the jury's verdict in this case.

**I.   BACKGROUND**

Defendant was charged in a third superseding indictment with the following crimes: 18 U.S.C. § 1959(a)(1): Violent Crimes in Aid of Racketeering (VICAR), specifically murder; 18 U.S.C. § 1513(a)(1)(B): Retaliating Against a Witness, Victim, or Informant; 18 U.S.C. § 848(e)(1)(A): Killing While Engaged in Drug Trafficking; 18 U.S.C. § 924(c)(1)(A)(ii), (iii), and 924(j)(1): Using, Carrying and Brandishing a Firearm During and in Relation to a Drug Trafficking Crime; Possessing and Brandishing a Firearm in Furtherance of Such Crime; Discharging Said Firearm; and Causing Death Through Use or Possession of a Firearm; 18 U.S.C. § 1512(a)(2)(C): Witness Tampering; 21 U.S.C. § 846: Conspiracy; 21 U.S.C. §§ 841(a)(1) and (b)(1)(E): Possession with Intent to Distribute Buprenorphine; and 18 U.S.C. § 1791(a)(2): Possession of Contraband in Prison. ECF No. 80.

The case proceeded to a jury trial beginning on December 4, 2023, before this Court. On

December 12, 2023, the jury returned a verdict convicting Defendant on all counts charged in the third superseding indictment. ECF No. 255. On the third day of trial, December 6, 2023, Janaya Atencio testified on behalf of the United States. Ms. Atencio was questioned about whether the Defendant and Conferina Halpern spent the night in her apartment on July 22, 2019, to which she testified that they had not spent the night.

The same evening that she concluded her testimony, Ms. Atencio reached out to Special Agent Acee and through Special Agent Stemo. Special Agent Acee reported this interaction to the prosecution team, and AUSA Castellano notified the Court and defense team prior to testimony on December 7, 2023, the fourth day of trial. At that time, AUSA Castellano had Special Agent Acee provide a summary on the record of his conversation with Janaya Atencio on the record. Specifically, Ms. Atencio called Agent Stemo's telephone, and spoke to Special Agent Acee. Ms. Atencio reported experiencing a lot of anxiety and said she had been thinking more about the evening of July 22, 2019, in response to her questioning earlier that day. Ms. Atencio reported she recalled that the next morning the Defendant, Devon Padilla, Marcos Ruiz, and Conferina Halpern returned to her house around 10:00 a.m. Ms. Atencio told Special Agent Acee that the Defendant was blackout drunk, and that the four of them "hung out" in the morning. Ms. Atencio said that Marcos Ruiz was high, possibly on methamphetamine, and tripping out, saying something to the effect that he could not believe Smurf was dead. Special Acee told Ms. Atencio that he would report it to the Court and the attorneys in the morning, which he did. Special Agent Acee also called her in the morning and went over what she had told him the night before, and she indicated that it was still correct. Ms. Atencio told Special Agent Acee that the aforementioned group showed up at 10:00 a.m., stayed there for an undetermined amount of time, and that Arturo Ruiz and a young girl, believed to be his daughter,

showed up as well.  Subsequently, they all went to Marcos Ruiz's house where they continued to party.  During that time, Gary Coca showed up in the Defendant's black car, and the Defendant and Gary Coca had a conversation to which she was not privy.

The defendant is requesting this Court to grant a new trial based on "newly discovered evidence." ECF No. 273 at 1.  Specifically, Defendant is claiming that one of the Government's witnesses that testified at trial, Janaya Atencio, is now reporting that she "got her dates mixed up," and that the Defendant and Conferina Halpern were at her apartment the evening and night of July 22, 2019, and the morning of July 23, 2019.  *Id*. at 5.  Ms. Atencio has allegedly reported to the defense team that Thomas Jeffries, her former and current partner, had told her at various times she was wrong in her recollection that the Defendant and Ms. Halpern had not stayed the night at her apartment and in her bedroom on the night that Leroy Lucero was killed.  *Id*.  Ms. Atencio also reported that Thomas Jeffries told her that he had seen recordings from the surveillance system from the apartment building that confirmed his knowledge that the Defendant and Conferina Halpern were in her apartment when Leroy Lucero was murdered.  *Id*.  Janaya Atencio also allegedly reported to the defense team that she "reached out to Agent Acee when she realized that she had gotten the date wrong, and that her testimony was inaccurate." *Id*. at 6-7.  Ms. Atencio alleges that Agent Acee assure her that "she had in fact gotten the date right, that her trial testimony was accurate, and that in any event it was 'no big deal'." *Id*. at 7.  Ms. Atencio also allegedly stated that Agent Acee told her "that the defense had the metadata from photographs which provided the correct date." *Id*.  Furthermore, Ms. Atencio alleges that when she was served with a trial subpoena, she had expressed concern about the fact that she had the wrong date but had been assured by the agent that she had the right correct date.  *Id.*

As to Janaya Atencio's claims about her conversations with Agent Acee after the trial

concluded, the United States would show the following at an evidentiary hearing:

On the morning of January 9, 2024, Ms. Atencio called Agent Acee, and they spoke for approximately twelve minutes. Ms. Atencio explained that her boyfriend, Thomas Jeffries, had been giving her a hard time about testifying and told her that she testified incorrectly. Ms. Atencio stated that the photographs her attorney had shared with prosecutors and the defense team indicated that the Defendant may not have been able to kill Leroy Lucero. Agent Acee was confused by Ms. Atencio's statements regarding the photographs, and asked her for further details. In particular, Ms. Atencio said there was a photograph of the Defendant eating chips on her couch on the same day that Leroy Lucero was killed. Based on that photograph, and statements made to her by her boyfriend, Ms. Atencio believed that she may have gotten some of her dates confused during her testimony. Ms. Atencio also stated that her boyfriend had told her not to testify and that the SNM was going to kill her. Ms. Atencio told Agent Acee that her boyfriend had refused to accompany her to Las Cruces during the trial and told her that she had gotten herself into this mess and was on her own. Subsequent to that phone call, Ms. Atencio sent the photograph of the Defendant eating chips on her couch to Agent Acee via text message. Agent Acee replied: "Hey I'm sure you're starting your day and I'm getting ready to start another trial. If you come up with more photos please send them to me. I don't think this changes anything because his attorney presented all the photos during the trial but it didn't change the jury's mind when they looked at all the evidence." Ms. Atencio did not reply.

On February 26, 2024, Ms. Atencio again texted Agent Acee and asked him to call her. Agent Acee called her that afternoon, and they spoke for approximately thirty-two minutes. During that conversation, Ms. Atencio detailed perceived threats that she was made aware of by her boyfriend. Ms. Atencio also stated that the Defendant had reached out to her but did not

4

elaborate on the details of that event. On repeated occasions during the call, Ms. Atencio stated that her boyfriend was upset with her for testifying and critical of her testimony. In response, Agent Acee asked Ms. Atencio if she had been honest when she testified. Ms. Atencio stated that she had been honest but that it had been difficult to recall all the events because she was nervous and afraid. It was not until after she testified and talked to her boyfriend that she had doubts about her recollection. Despite that, Ms. Atencio maintained that she had testified truthfully and to the best of her ability but admitted that her boyfriend was confusing her and causing her doubts. Agent Acee asked Ms. Atencio to have her boyfriend call him or the Defendant's attorneys if he wished to provide additional information. Several hours after the phone call, Agent Acee received a text message from Ms. Atencio reading: "Hey Brian, for the safety of myself & my kids I don't feel comfortable going forward with anything." Agent Acee did not reply and has had no communications with Ms. Atencio since.

## II.   LAW REGARDING MOTIONS FOR NEW TRIAL

Rule 33 of the Federal Rules of Criminal Procedure provides:

**(a) Defendant's Motion.** Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires. If the case was tried without a jury, the court may take additional testimony and enter a new judgment.

**(b) Time to File.**

> **(1) Newly Discovered Evidence.** Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty. If an appeal is pending, the court may not grant a motion for a new trial until the appellate court remands the case.
>
> **(2) Other Grounds.** Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty.

Fed. R. Crim. P. 33 (bold in original).

Under Rule 33, the district court has discretion to grant a new trial if the interests of justice require one. *See* Fed. R. Crim. P. 33(a). *See also United States v. Quintanilla*, 193 F.3d 1139, 1146 (10th Cir. 1999)("Federal Rule of Criminal Procedure 33 authorizes a district court to grant a new trial if required by the interests of justice."). "A motion for a new trial is not," however, "regarded with favor and should only be granted with great caution." *United States v. Sinclair*, 109 F.3d 1527, 1531 (10th Cir. 1997)(citing *United States v. Chatman*, 994 F.2d 1510, 1518 (10th Cir. 1993)). "[A] defendant may not invoke rule 33 when he or she has pled guilty." *United States v. Christy*, 883 F. Supp. 2d 1040, 1044 (D.N.M. 2012)(Browning, J.)(citing *United States v. Lambert*, 603 F.2d 808, 809 (10th Cir. 1979)).

Relevant to the motion for new trial at bar here, Rule 33 permits a defendant to move for a new trial in the event of newly discovered evidence if the defendant presents that motion within three years of the verdict of guilt. *See* Fed. R. Crim. P. 33(b)(1). Ordinarily, a defendant seeking a new trial under Rule 33(b)(1) must satisfy a five-part test for newly discovered evidence that the Tenth Circuit outlined in *United States v. Sinclair*. The defendant must show that:

> "(1) the evidence was discovered after trial; (2) the failure to learn of the evidence was not caused by his own lack of diligence; (3) the new evidence is not merely impeaching; (4) the new evidence is material to the principal issues involved; and (5) the new evidence is of such a nature that in a new trial it would probably produce an acquittal."

*Sinclair*, 109 F.3d at 1531 (quoting *United States v. Stevens*, 978 F.2d 565, 570 (10th Cir. 1992)). *See also United States v. Velarde*, No. CR 98-391 JB, 2008 WL 5993210, at *31-44 (D.N.M. May 16, 2008)(Browning, J.)(permitting a new trial in a sexual assault case where, after the trial, the defendant uncovered evidence that the alleged victim had accused other individuals of sexual assault). "Under *Sinclair*, a court cannot grant a new trial on the discovery of new impeachment evidence." *United States v. Rodella*, No. CR 14-2783 JB, 2015 WL 711931, at *33 (D.N.M. Feb.

2, 2015)(Browning, J.)(citing *United States v. Sinclair*, 109 F.3d at 1531).  Discrediting a witness's veracity is the definition of impeachment and cannot be the basis for a grant of a motion for new trial grounded on newly discovered evidence.  *See also United States v. DeLeon*, No. CR 15-4268 JB, 428 F.Supp.3d 841, 1168 n.157 (D.N.M. Oct. 29, 2019)(Browning, J.)(citing Definition of Impeach, Black Law's Dictionary (11th ed. 2019)(defining impeach as "[t]o discredit the veracity of (a witness)")).

### III.  ARGUMENT

#### A. Atencio's post-trial statements do not qualify as newly discovered evidence under *United States v. Sinclair*'s five-factor test.

The Court should not grant Defendant a new trial based on Janaya Atencio's post-trial statements.  Atencio's post-trial statements, which Defendant proffers as newly discovered evidence, are not newly discovered evidence under *Sinclair*.  The defendant must show that:

> "(1) the evidence was discovered after trial; (2) the failure to learn of the evidence was not caused by his own lack of diligence; (3) the new evidence is not merely impeaching; (4) the new evidence is material to the principal issues involved; and (5) the new evidence is of such a nature that in a new trial it would probably produce an acquittal."

*Sinclair*, 109 F.3d at 1531 (quoting *United States v. Stevens*, 978 F.2d 565, 570 (10th Cir. 1992)).  Defendant's proffered evidence may meet factor one but fails to meet the remaining factors.  Consequently, the Court should find that such statements are not newly discovered evidence and are therefore untimely pursuant to Rule 33(b)(2).

##### i. *Ms. Atencio's statements were discovered after trial, but the Defendant's lack of due diligence during trial caused them to be discovered after the trial.*

To meet the first *United States v. Sinclair* prong, the Defendant must demonstrate that Ms. Atencio's statements were discovered after trial.  Based on the timeline of events outlined above, the United States acknowledges that Ms. Atencio's statements now at issue were made

7

*after* the trial.  However, the Defendant was on notice before the start of the fourth day of trial that Ms. Atencio had reached out to Agent Acee regarding her trial testimony.  Agent Acee went on the record to explain the conversation that he had with Ms. Atencio after her testimony but still during trial.  In response, defense counsel apparently did nothing to follow up on that information while the trial was ongoing.  Had defense counsel reached out to Ms. Atencio during trial, they may well have learned the same information that she later provided to them and to Agent Acee and been able to use that information while the trial was ongoing instead of as a basis for granting a new trial after their client was convicted on all charges.  Consequently, although Ms. Atencio's additional statements came to light after the trial was concluded, failure to learn of these statements during the trial was caused by defense counsel's lack of diligence.[1]  Thus, while the first *Sinclair* prong is satisfied, the second prong is not, and the Court should find Ms. Atencio's statements do not qualify as newly discovered evidence.

      ii.  *Ms. Atencio's post-trial statements are merely impeaching.*

  Even if the Court found the first two *United States v. Sinclair* prongs were satisfied, Ms. Atencio's statements are merely impeaching.  As this Court has previously recognized, "[u]nder *Sinclair*, a court cannot grant a new trial on the discovery of new impeachment evidence." *United States v. Rodella*, No. CR 14-2783 JB, 2015 WL 711931, at *33 (D.N.M. Feb. 2, 2015)(Browning, J.).  Information that would serve to discredit the veracity of a witness is the definition of impeachment and cannot be the basis for the granting of a motion for new trial grounded on newly discovered evidence.  *See*, *e.g.*, *United States v. Baca*, 447 F. Supp. 3d 1149, 1208 (D.N.M. 2020), *aff'd sub nom. United States v. Cordova*, 25 F.4th 817 (10th Cir. 2022).  Here, the post-trial statements made by Ms. Atencio do nothing more than potentially call into

---

[1] The United States asserts that these additional statements are not accurate and are nothing more than the result of pressure being placed on Ms. Atencio by others.

question her veracity.  Further, despite having to satisfy all five of the *Sinclair* prongs, Defendant's motion notably makes no specific argument as to why Ms. Atencio's statements outlined in his motion are not merely impeaching. Expressing doubt regarding the date of the party at her apartment, detailing the boyfriend's skepticism regarding her testimony, or talking about the pressure that her boyfriend put on her after the trial would only serve to impeach her credibility.  The jury was able to assess Ms. Atencio's credibility and, when weighing her credibility, the jury was able to take into consideration other evidence that may have conflicted with her testimony.  Thus, if the jury concluded that Ms. Atencio was credible, it did so with the benefit of considering her testimony in light of the totality of the other evidence at the trial.

Moreover, the Defendant is simply incorrect that had Ms. Atencio testified that Defendant was at her apartment all evening, night, and early morning on July 22-23, 2019, that "all three alibi witnesses, Ms. Atencio, Ms. Halpern, and Ms. Montano would have been in agreement." *See* ECF No. 273 at p. 6.  Under cross examination by AUSA Armijo, both Ms. Halpern and Ms. Montano tellingly admitted that they could not be certain about the date of the party at Ms. Atencio's apartment.  In fact, Ms. Montano admitted that she had no independent recollection of the date of the party in question and that it was defense counsel who told her the date prior to her testimony.

In sum, Ms. Atencio's post-trial statements are merely impeaching and do not meet the third *Sinclair* prong.  The Court should deny Defendant's motion for new trial.

> iii.     ***The evidence is not material to the principal issues involved.***

For the reasons noted above that indicate the statements are merely impeaching, the evidence is also not material.  The proposed testimony by Ms. Atencio at best is impeaching and does nothing to add to the testimony of Ms. Halpern or Ms. Montano.  Ms. Montano was

9

uncertain of the date she was at Ms. Atencio's apartment. Arguably, Ms. Halpern claimed she was at the apartment with the Defendant at the time of the Lucero murder. However, Ms. Halpern's testimony was greatly discredited by the fact that she admitted to taking "hush money" from the Defendant, his son, his son's mother, and other individuals who approached her and told her they could give her money to help her get her children back. Furthermore, Ms. Halpern testified that she had great fear of the Defendant. Consequently, Ms. Atencio's claimed new statements are at best impeaching and are not material.

### *iv.* *The evidence would not have produced an acquittal.*

The Defendant must establish that the new evidence is of such a nature that in a new trial it would probably produce an acquittal. *Sinclair*, 109 F.3d at 1531. Other than arguing in an entirely conclusory fashion that Ms. Atencio's post-trial statements would have resulted in an acquittal if elicited at trial, the Defendant fails to meet this prong for the reasons identified above. At best, the newly claimed evidence might impeach Ms. Atencio's testimony but fails to overcome the testimony of other witnesses in the case to include Gary Coca. Additionally, Ms. Atencio would be impeached with the statements she made to Agent Acee after her trial testimony but during trial in which she recalled that the Defendant and others returned to her apartment the morning after the murder which further corroborates her trial testimony that the Defendant and Ms. Halpern did not spend the night and left before the murder occurred.

## IV.    CONCLUSION

For the stated reasons, the United States respectfully asks this Court to deny Defendant's motion for new trial and to uphold the jury's verdict.

                        Respectfully Submitted,

                        ALEXANDER M.M. UBALLEZ
                        United States Attorney

                        ***Electronically Filed 3/5/2024***
                        MARIA Y. ARMIJO
                        RANDY M. CASTELLANO
                        RYAN ELLISON
                        Assistant United States Attorneys
                        200 N. Church Street
                        Las Cruces, NM 88001
                        (575) 522-2304 - Tel.

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send electronic notification to defense counsel of record on this date.

/s/ _____
MARIA Y. ARMIJO
Assistant United States Attorney